John T. Johnson, Cal. Bar No. 281609
jjohnson@fr.com
Jeffrey C. Mok (*pro hac vice* forthcoming)
jmok@fr.com
Fish & Richardson P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Phone: (213) 533-4240 • Fax: (858) 678-5099

Attorney for Defendant Skyhorse Publishing, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TC Reiner, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>Robert Eringer, an individual, and Skyhorse Publishing, Inc., a Delaware corporation<br><br>        Defendants. | Case No. 2:18-cv-00243-DSF (JPRx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SKYHORSE PUBLISHING, INC. MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>Date:      May 20, 2019<br>Time:     1:30 p.m.<br>Judge:    Hon. Dale S. Fischer<br>Courtroom: 7D<br><br>Pre-Trial Conference: May 6, 2019<br>Time: 3:00 p.m.<br>Trial Date: June 4, 2019<br>Time: 8:30 a.m.<br>Courtroom: First Street Courthouse – Room 7D<br>Judge: Hon. Judge Dale S. Fischer |

MEMORANDUM OF LAW IN SUPPORT OF SKYHORSE MOTION TO
ENFORCE SETTLEMENT AGREEMENT
Case No. 2:18-cv-00243-DSF(JPRx)

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................1

II.  BACKGROUND ...................................................................................2

III.  ARGUMENT .........................................................................................7

    A.  The Parties Entered a Binding Settlement Agreement, and Plaintiff's Failure to Sign the Written Agreement Does Not Alter Enforceability ..7

    B.  An Evidentiary Hearing is Not Necessary .................................................9

IV.  CONCLUSION ...................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Aeronautics Corp., v. Grand Central Aircraft Corp. v. Grand Central Aircraft Co.*, 155 Cal.App.2d 69, 317 P.2d 694 (1957) ............................... 9

*Blix St. Records, Inc. v. Cassidy*, 191 Cal. App. 4th 39, 48 (Cal. Ct. App. 2010) ................................................................................................................. 8

*Calcor Space Facility, Inc. v. McDonnell Douglas Corp.*, 5 Fed. App'x. 787 (9th Cir. 2001) ........................................................................................... 6

*Callie v. Near*, 829 F.2d 888 (9th Cir. 1987) ................................................................ 7

*In re City Equities Anaheim, Ltd.*, 22 F.3d 954 (9th Cir. 1994) .................................... 7

*Harrop v. Western Airlines, Inc.*, 550 F.2d 1143 (9th Cir. 1977) ................................. 8

*Inamed Com. v. Kuzmak*, 275 F. Supp. 2d 1100 (C.D. Cal. 2002), *aff'd* 64 Fed. Appx. 241 (Fed. Cir. 2003) .................................................................... 7

*Ladas v. California State Auto. Assn.*, 19 Cal. App. 4th 761, 23 Cal. Rptr. 2d 810 (1993) ....................................................................................... 7

*Landberg v. Landberg*, 24 Cal.App.3d 742, 101 Cal.Rptr. 335 (1972) ........................ 9

*Maynard v. City of San Jose*, 37 F.3d 1396 (9th Cir. 1994) ........................................ 8

*In re Pago Pago Aircrash of January 30, 1974*, 637 F.2d 704 (9th Cir. 1981) ............................................................................................................. 9

*Robinson & Wilson, Inc. v. Stone*, 35 Cal.App.3d 396 (Cal. Ct. App. 1973) ............................................................................................................. 7

*TNT Marketing, Inc. v. Agresti*, 796 F.2d 276 (9th Cir. 1986) .................................... 7

## I. INTRODUCTION

Defendant Skyhorse Publishing, Inc. ("Skyhorse") and Plaintiff Reiner negotiated and reached a settlement, memorializing it in a written Settlement Agreement, following a court-ordered mediation.[1]  Although Skyhorse maintains that the claims against it are without merit, Skyhorse agreed to settle—agreeing to a payment ($2,500) and a search for some additional emails between Skyhorse and the other defendant in this case, Mr. Robert Eringer—so that Skyhorse could remove itself from largely a personal dispute between Plaintiff "TC Reiner" and Mr. Eringer.  Plaintiff Reiner agreed to the written Settlement Agreement, and Skyhorse executed it shortly after Reiner agreed.  (Johnson Decl., at ¶ 2, Ex. A).  Plaintiff agreed to sign the Settlement Agreement and to file a stipulation of dismissal.

Skyhorse thereafter fulfilled its obligations under the Settlement Agreement, searching for and providing additional emails to Reiner's counsel, and also, providing him with a check in the settlement amount ($2,500).  Counsel for plaintiff requested Skyhorse's help in understanding certain facts, and Skyhorse cooperated in good faith with Plaintiff to provide the sought-after details.  Counsel for Plaintiff confirmed on numerous occasions that the Settlement Agreement would be signed. On a telephone call on April 10, Reiner's counsel indicated that he had not been able to obtain his client's signature, and on April 15, Reiner's counsel again confirmed that he had not been able to obtain his client's signature, informing counsel for Skyhorse that the settlement was ineffective because it was orally agreed upon at mediation.

Skyhorse respectfully requests that the Court enforce the post-mediation Settlement Agreement between Skyhorse and Plaintiff, which Plaintiff has never

---

[1] The mediation took place at the Law Offices of Paul Supnik, on March 11, 2019.

contested as reflecting the parties' settlement on March 11.[2] The parties have met and conferred pursuant to L.R. 7-3 and have agreed that this dispute is ripe for presentation to the Court. The parties also respectfully submit that a shortened briefing schedule is in order for purposes of presenting this dispute at the May 6 pre-trial hearing, as it may reduce the number of issues for trial. The parties plan to file a joint request for a shortened schedule with a proposed briefing schedule for the Court's consideration.

## II. BACKGROUND

In this action, Plaintiff "TC Reiner," a photographer, claims copyright infringement and breach of contract against Defendant Robert Eringer, whom Reiner once called a "friend," and Skyhorse, the publisher of one of Eringer's books entitled *Motional Blur*. In June 2016, Eringer sat for a photo shoot with Plaintiff, resulting in a photograph of Eringer (the "Photograph"), which Plaintiff Reiner agreed to allow to be used on the book jacket of *Motional Blur*.

Around March 2017, after the publication of *Motional Blur* in October 2016, Plaintiff and Eringer engaged in a dispute about payment for the photo shoot, with Plaintiff claiming that Eringer owed him money for the photo shoot, and Eringer claiming that Plaintiff agreed to do the photo shoot for free. A personal dispute between the two men simmered underneath, including a dispute about Reiner trying to take nude risqué photos of Eringer's daughter. (*See* Dkt. 68, Reiner's MIL No. 2 – Excluding Evidence Discussions Between Plaintiff Reiner and Defendant Eringer's Daughter).

Plaintiff eventually threatened to sue Eringer if he did not receive payment for the photo shoot ($750, plus costs), and also threatened to bring Eringer's publisher,

---

[2] The Court's "Order re Jury Trial" (Dkt. 57) set February 25, 2019, as the motion hearing cut-off. This motion is after that date because Plaintiff confirmed his position that there was no settlement after the cut-off. The timing of this motion does not delay the case or prejudice Plaintiff.

Skyhorse, into the dispute: "Of course, collecting a judgment can be somewhat difficult, especially when you hide your assets, but it's not impossible. Your publisher is more exposed obviously. (Johnson Decl., at ¶ 15, Ex. M). Plaintiff Reiner also explained that with a lawsuit, "[a]t the very least, your relationship [with Skyhorse] suffers and they may be forced to come after you with a legal action of their own as a result." *Id.*

Plaintiff filed suit against Eringer and Skyhorse on January 10, 2018. Dkt. No. 1. Plaintiff does not claim infringement over the usage of the Photograph on the *Motional Blur* book jacket. In fact, Plaintiff specifically confirmed that he authorized usage of the Photograph on the *Motional Blur* book jacket, granting authorization that: "Please understand that the usage agreement of the image was only for the back book cover." (Second Amended Complaint (Dkt. 50) at ¶ 26). As such, the publication and sale of *Motional Blur* by Skyhorse is not at issue in this case. Instead, Plaintiff alleges that Defendant Eringer improperly used the Photograph outside of the book jacket, for example, on websites, social media, and for several book store book signings.

As to Skyhorse, Plaintiff's allegations of improper use have changed over time. Initially, Plaintiff alleged that Skyhorse improperly sent a standalone version of the Photograph (i.e., outside of the *Motional Blur* book jacket) to Eringer. But there is no evidence supporting that allegation. Instead, the evidence demonstrates that Skyhorse emailed Eringer a PDF file of the *Motional Blur* book jacket which included the Photograph on the back flap of the book jacket (Johnson Decl., at ¶ 16, Ex. N, reproduced below):

This PDF file was the electronic proof-copy of the book jacket for Eringer's approval before Skyhorse would send the book to the printer for publication.

In the course of this action, Plaintiff changed his allegations against Skyhorse to contend that this transmission of the PDF to the book author, Eringer, constitutes an infringement (even though there is no dispute that Skyhorse had the right to use the Photograph on the *Motional Blur* book jacket). In discovery, Skyhorse sought to understand from Plaintiff whether Plaintiff had any other theories of infringement or breach against Skyhorse.[3] Plaintiff identified none. Thus, the single act of the PDF transmission—from the publisher Skyhorse to the book author Eringer—is the sole basis for Plaintiff's claims against Skyhorse. Skyhorse contends that any theory of infringement or breach based on the PDF transmission is baseless, because the PDF file is simply a use of the Photograph on the *Motional Blur* book jacket, consistent with the authorized usage.[4]

---

[3] See Skyhorse's motion in limine to preclude evidence and argument on theories not disclosed in Plaintiff's interrogatory responses, which requests that the Court preclude Plaintiff from introducing evidence or argument of any other theories of infringement or breach beyond the PDF transmission. (Dkt. 71).

[4] *See Choyce v. SF Bay Area Indep. Media Ctr.*, 669 F. App'x 863 (9th Cir. 2016) (affirming award of attorneys' fees for frivolousness of plaintiff's claim, and the considerations of deterring future baseless claims and compensation for having to defend against them.).

1  The parties met for mediation on March 11, 2019, at the Law Offices of Paul D. Supnik, in Beverly Hills. (Dkt. 62).[5] After negotiations during the mediation, Plaintiff and Skyhorse orally agreed to settle, leading to the mediation's conclusion as to Plaintiff and Skyhorse (the mediation between Plaintiff and Eringer continued). (Johnson Decl., at ¶ 2) Plaintiff and Skyhorse agreed to remain at Mr. Supnik's offices following the conclusion of the Reiner-Skyhorse mediation, in order to prepare and finalize a written Settlement Agreement memorializing the oral settlement. (*Id.*). Plaintiff and Skyhorse exchanged a hard-copy draft of a proposed settlement agreement. (Johnson Decl., at ¶ 4, Ex. C). After counsel for Reiner and his client reviewed this draft, Plaintiff requested modifications to it. (*Id.*). Those modifications were made and the agreement was finalized into the Settlement Agreement. (Johnson Decl., at ¶ 5, Exs. A, D). Skyhorse agreed to have its President, located in New York, sign. Counsel for Plaintiff said that his client had a long day, and that he would sign the Settlement Agreement later. (Johnson Decl., at ¶ 5). Before departing Mr. Supnik's offices, counsel for Plaintiff and Skyhorse shook hands and each agreed to get the Settlement Agreement signatures from their clients and to finalize the stipulation of dismissal papers later. (*Id.*).

Speaking by teleconference shortly thereafter, counsel for Plaintiff informed counsel for Skyhorse that he was in the process of getting the Settlement Agreement signed by Reiner. In a later email to counsel for both Defendants, counsel for Plaintiff indicated "**I don't expect John [Counsel for Skyhorse] to be involved going forward**, but until Skyhorse is dismissed, I'll still serve him." (Johnson Decl., at ¶ 8, Ex. F) (emphasis added).

Since then, Skyhorse has sought, unsuccessfully, to have Plaintiff's agreement on a joint stipulation of dismissal and Plaintiff's return of the Settlement

---

[5] Before the mediation began, the parties signed a Mediation Confidentiality Agreement (Form ADR-17). Defendant Skyhorse, during the mediation, also served Plaintiff with a Rule 68, Offer of Judgment. Fed. R. Civ. P. 68.

Agreement signed by Reiner. (Johnson Decl., at ¶¶ 6-14 and accompanying exhibits). Plaintiff's various responses to Skyhorse have included explanations that Plaintiff's counsel was "working" on it (understood to mean getting Reiner's signature on the Settlement Agreement and filing the stipulation of dismissal), and that Reiner was going away on vacation. (Johnson Decl., at ¶¶ 9, 11). In the discussions Skyhorse's counsel has had with Plaintiff's counsel since the mediation, at no time has Reiner disagreed with the Settlement Agreement which had been reached and memorialized on March 11, or expressed that any terms of the agreement (including any materials ones) are in dispute. (Johnson Decl., at ¶¶ 11, 12).

On Skyhorse's part, it has fulfilled its obligations under the Settlement Agreement, searching for and providing additional emails to Reiner's counsel, and also, providing Reiner with a check in the settlement amount ($2,500).

Counsel for Skyhorse has also cooperated in good faith with Plaintiff in answering questions Plaintiff has about certain facts. (Johnson Decl., at ¶ 10; Ex. H).

On a meet and confer on April 15, counsel for Plaintiff explained that while he agreed that a settlement between Skyhorse and Reiner was reached on March 11, that settlement was an oral settlement that is not admissible because of mediation confidentiality.[6] (Johnson Decl., at ¶ 14). In a follow-up email, counsel again acknowledged "the oral settlement," but again raised mediation confidentiality over oral settlements. (Johnson Decl., at ¶ 17; Ex. O.

---

[6] In the Mediation Confidentiality Agreement (Form ADR-17), Paragraph 5, the parties agreed that, "In an action to or proceeding to enforce a settlement, *this agreement shall not render inadmissible a written settlement agreement, or a settlement placed on the record, reached as a result of the mediation.*" (emphasis added).

## III. ARGUMENT

### A. The Parties Entered a Binding Settlement Agreement, and Plaintiff's Failure to Sign the Written Agreement Does Not Alter Enforceability

It is well established that the Court has the power to enforce a settlement agreement entered in a case, either summarily or, if there is a factual dispute regarding the existence of the agreement, after an evidentiary hearing. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987); *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994); *TNT Marketing, Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986). Here, neither Plaintiff nor Skyhorse dispute that a settlement was agreed upon and memorialized into a final written Settlement Agreement. But Plaintiff has refused to perform his obligations under the Settlement Agreement, relying upon the argument that even though the parties settled, it was oral and at a confidential mediation, and that he has not signed the Settlement Agreement. Skyhorse respectfully requests the Court enforce the parties' written Settlement Agreement.

Under California law, a settlement agreement is binding—regardless of whether it is written—unless it "is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained." *Robinson & Wilson, Inc. v. Stone*, 35 Cal.App.3d 396, 407 (Cal. Ct. App. 1973). "To be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Ladas v. California State Auto. Assn.*, 19 Cal. App. 4th 761, 770, 23 Cal. Rptr. 2d 810, 814 (1993) (citing *Robinson & Wilson*, 35 Cal. App. 3d at 407). While uncertainty regarding material terms that were reserved for further negotiation may render a contract unenforceable, this uncertainty defense is disfavored. *Inamed Com. v. Kuzmak*, 275 F. Supp. 2d 1100, 1120-21 (C.D. Cal. 2002), *aff'd* 64 Fed. Appx. 241 (Fed. Cir. 2003). Rather, "the court should enforce an agreement if it appears the parties intended to enter into a contract and the

outlines of the agreement are sufficiently definite that the court knows what is to be enforced." *Id.* (citing *Okun v. Morton*, 203 Cal. App. 3d 805, 817 (Cal. Ct. App. 1988).

To be enforced, a settlement agreement must meet two requirements. First, it must be a complete agreement. *See Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994); *Callie*, 829 F.2d at 890 (citing *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983). Second, both parties must have either agreed to the terms of the settlement (or authorized their respective counsel to settle the dispute). *See Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977).

Here, the facts demonstrate that there is a complete and definite agreement as to the terms and form of the settlement, as evidenced by the written Settlement Agreement. (Johnson Decl., at ¶¶ 2, 5-6, and corresponding Exs. A, D, and E). In fact, the parties came to an agreement on the language of the written agreement, including its terms. The fact of the written post-mediation Settlement Agreement also demonstrates that there is no uncertainty as to the intentions of the parties. *See Blix St. Records, Inc. v. Cassidy*, 191 Cal. App. 4th 39, 48 (Cal. Ct. App. 2010) ("When parties intend that an agreement be binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement.").

Further, Plaintiff's counsel admits that there was an oral settlement between Plaintiff and Skyhorse. (Johnson Decl., at ¶ 17, Ex. O). This agreement, reached at mediation, was then put down in writing after mediation concluded, and memorialized in the final Settlement Agreement. (Johnson Decl., at ¶¶ 2, 5-6, and corresponding Exs. A, D, and E). Thus, there was an unqualified meeting of the

minds between Skyhorse and Plaintiff, with no condition being placed on settlement, as memorialized in the written Agreement.[7]

Any attempt by Plaintiff to cast the written Settlement Agreement as distinct and independent from the oral settlement fails. First, the parties ended the mediation and agreed to work together to finalize a written agreement, which they did. Moreover, the parties exchanged a draft of the settlement agreement, and modifications to its terms proposed by Plaintiff were agreed and incorporated into the final Settlement Agreement. At no time has or will it challenge any of the terms of the final Settlement Agreement.

Plaintiff is incorrect that the mediation confidentiality is applicable here. The Mediation Confidentiality Agreement specifically permits a written settlement agreement reached as a result of the mediation.[8]

### B. An Evidentiary Hearing is Not Necessary

"Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie*, 829 F.2d at 890. Here, there is no dispute as to whether the parties entered into a binding settlement agreement, and there are no material facts concerning any of the terms of settlement. Therefore, it is respectfully submitted that the present record is sufficient to determine these issues as a matter of law, and accordingly no evidentiary hearing is necessary. *See Calcor Space Facility, Inc. v. McDonnell Douglas Corp.*, 5 Fed. App'x. 787, 789 (9th Cir. 2001) (evidentiary hearing not

---

[7] *See Landberg v. Landberg*, 24 Cal.App.3d 742, 752, 101 Cal.Rptr. 335, 342 (1972); *American Aeronautics Corp., v. Grand Central Aircraft Corp. v. Grand Central Aircraft Co.,* 155 Cal.App.2d 69, 80, 317 P.2d 694, 701 (1957); *In re Pago Pago Aircrash of January 30, 1974*, 637 F.2d 704, 706 (9th Cir. 1981).
[8] Also, the actions of the parties after the conclusion of the mediation (outside the scope of the mediation's confidentiality), including Plaintiff's request for and Skyhorse's making of changes to a draft written settlement agreement, discussion of execution of the agreement and Skyhorse's execution, and discussion of "wrapping up the dismissal papers," also demonstrate that Plaintiff and Skyhorse had a complete and definite settlement agreement. (Johnson Decl., at ¶¶ 2-6).

9
MEMORANDUM OF LAW IN SUPPORT OF SKYHORSE MOTION TO ENFORCE SETTLEMENT AGREEMENT
Case No. 2:18-cv-00243-DSF(JPRx)

required where contract enforceability turns upon objective factors and no party disputes evidence presented in declarations).

## IV. CONCLUSION

For the reasons set forth above, Skyhorse respectfully requests that the Court enforce the written Settlement Agreement reached between Plaintiff and Skyhorse. Skyhorse and Reiner met and conferred and believe that a shortened briefing schedule is in order to have this matter presented to the Court at the May 6 pre-trial conference, subject to Court approval. As such, the parties will submit a request for a modified schedule to govern, outside of L.R. 7-3 and 7-4.

Dated: April 19, 2019         Fish & Richardson P.C.


By: */s/ John T. Johnson*
    John T. Johnson
    jjohnson@fr.com
    Jeffrey C. Mok (*pro hac vice* forthcoming)
    jmok@fr.com
    Fish & Richardson P.C.
    633 West Fifth Street, 26th Floor
    Los Angeles, CA 90071
    Phone: (213) 533-4240
    Fax: (858) 678-5099

*Attorney for Defendant
Skyhorse Publishing, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 19, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

/s/ John T. Johnson
John T. Johnson
jjohnson@fr.com